# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DONTA WILLIS,

    Plaintiff,

v.                                           Case No. 18-CV-2011

MELISSA BENNETT, *et al.,*

    Defendants.

## ORDER

*Pro se* plaintiff Donta Willis filed a lawsuit under 42 U.S.C. § 1983, alleging that the defendants violated his civil rights at the Milwaukee Secure Detention Facility ("MSDF"). The court screened the amended complaint and allowed Willis to proceed with an Eighth Amendment claim that Melissa Bennett, Sharkita Jones, and Sergeant Schloegl showed deliberate indifference toward his health and safety when they placed him in a "hazardous" cell. (ECF No. 7 at 6; ECF No. 9 at 2; ECF No. 11.) Willis subsequently voluntarily dismissed Schloegl from this lawsuit on April 25, 2019. (*See* ECF Nos. 13 and 18.) This order resolves the remaining defendants' motion for summary judgment and dismisses the case.

    1.1    *Relevant Facts*

The facts in this case are undisputed. (*See* Am. Compl., ECF No. 8; Def. Proposed Findings of Fact, ECF No. 28; and Pl. Opposition Br., ECF No. 35.) Willis

is a former inmate at MSDF. (ECF No. 28, ¶ 1.) Melissa Bennett and Sharkita Jones are correctional officers at MSDF. (*Id.*, ¶¶ 2-3.)

On April 23, 2018, Willis told Jones that there was water on his cell floor "emerging" through the walls. (ECF No. 8 at 3.) Willis was housed on 8th floor South C07. (ECF No. 29-3.) After inspecting the cell, Jones instructed Willis to use cleaning supplies to clean the water. (ECF No. 8 at 3.) Defendants' "maintenance specialist" explains that, when there is a leak in a cell, the proper response is to clean the water and wait to see if the issue persists. (ECF No. 31, ¶ 9.)

Willis attempted to clean the water himself but could not keep up with the flow. (ECF No. 8 at 3.) He then told Jones that it was not possible to fix the problem using cleaning supplies. (*Id.*) Jones inspected the cell again and told Willis to "lock in." (*Id.*) She told him that someone would contact the maintenance department to resolve the issue. (*Id.*) Defendants explain that the "maintenance department" is responsible for fixing leaks in a cell at MSDF. (ECF No. 28, ¶ 10.)

Several hours later, during lunch time, Willis reminded Jones that maintenance still had not cleaned the water in his cell. (ECF No. 8 at 3.) According to Willis, Jones told him that "Sergeant Bennett has been informed" and that "the maintenance department has been contacted." (*Id.*) Jones allegedly stated, "she is sorry but there is not anything more she can do." (*Id.*) Jones told Willis to return to his cell after he finished eating lunch. (*Id.*) Willis stated that "he has a disability" and the wet floor posed a risk to his safety. (*Id.*) Jones again allegedly stated "there is nothing more she can do." (*Id.*) Willis then reluctantly returned to his cell. (*Id.*)

2

Upon returning to his cell, Willis tried to avoid the "large puddles of water" that covered "the area in the middle and back area of the cell." (ECF No. 8 at 3.) Nevertheless, Willis "slips and fall," injuring his back, shoulder, hip, and lower leg. (*Id*. at 4.) Willis's cellmate pushed the emergency call button. (*Id*.) In response, Jones "immediately alert[ed] medical staff to report to Willis's cell for a medical emergency." (*Id*.)

Willis went to Aurora Health Care, where he underwent an x-ray and received a prescription for an ace-wrap and pain medication. (ECF No. 8 at 3-4.) He then returned to MSDF later that day, where someone placed him back in the same "hazardous" cell. (*Id*. at 4.) Willis protested but was told to "lock in" and that "maintenance has been notified." (*Id*.)

1.2  *Summary Judgment Standard*

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

1.3  *Analysis*

Prison conditions that deny the "minimal civilized measure of life's necessities" violate the Eighth Amendment. *See Williams v. Shah*, 927 F.3d 476, 480 (7th Cir. 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008)  At summary judgment, a prisoner must produce evidence from which a reasonable jury can conclude that (1) the prisoner suffered an "objectively" serious deprivation that denied him the minimal civilized measure of life's necessities, and (2) prison officials "subjectively" had a sufficiently culpable state of mind. *Williams*, 927 F.3d at 480-81.

"An objectively 'sufficiently serious' risk [] is one that society considers so grave that to expose *any* unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss,* 384 F.3d 879, 882 (7th Cir. 2004) (internal citations omitted) (emphasis in original). Indeed, "extreme deprivations are required to make out a conditions-of-confinement claim." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). The Eighth Amendment does not require prison officials to provide an environment that is free from safety hazards. *Carroll v. DeTella,* 255 F.3d 470, 472 (7th Cir. 2001).

Regarding "subjective" deliberate indifference, "the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). This requires that the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id*. "Because a

prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' prison officials who actually knew of a substantial risk to inmate health or safety can nevertheless escape liability if they responded reasonably to the risk, whether or not the harm was ultimately averted." *LaBrec v. Walker*, No. 18-1682, 2020 WL 400195 (7th Cir. Jan. 24, 2020). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.*

Willis's only allegation regarding an "objectively" serious risk is that he had puddles in his cell that covered roughly half the floor. While the Seventh Circuit has noted that a "flooded cell" constitutes a hazard, s*ee Townsend v. Fuchs,* 522 F.3d 765, 773-74 (7th Cir. 2008), it has also concluded that "slippery surfaces ... in prisons, without more, cannot constitute a hazardous condition of confinement," *Pyles v. Fahim*, 771 F.3d 403, 410-11 (7th Cir. 2014). Although puddles are unpleasant, they fall short of an "extreme" deprivation that "offends contemporary standards of decency." *See Harmon v. Pickering*, 70 F.3d 1274 (7th Cir. 1995) ("Dirt and puddles are unpleasant but not unconstitutional."); *see also Smith v. Melvin*, 94 F.3d 647 (7th Cir. 1996) ("Leaky toilets and puddles are unpleasant but not unconstitutional.")

The court notes that prolonged exposure to minor hazards could eventually amount to an "objectively" serious risk. *See Giles*, 914 F.3d at 1051. Toward that end, Willis notes that someone placed him back in the same "hazardous" cell after he returned from Aurora Health Care. Willis, however, does not provide any information on how long he was exposed to the puddles in his cell following his trip to Aurora

5

Health Care. Nor has he provided any information as to how much water was in his cell, whether it was possible for him to be in his cell without having to stand in water, or whether it impacted his ability to sleep.

At summary judgment, Willis is responsible for providing evidence from which a reasonable jury can conclude that he faced a serious hazard in his cell. In the absence of such evidence, no reasonable jury could conclude that Willis was subjected to an "objectively" serious hazard. *See e.g. Montgomery v. Keating*, No. 4:15-CV-00084-TWP, 2015 WL 4523449, at *2 (S.D. Ind. July 24, 2015) (concluding that plaintiff's complaint of "standing water" in his cell did not state a claim for deliberate indifference because plaintiff did not provide information on "how much water was in his cell, whether [plaintiff] was required to stand in the water, or whether he could remain dry on his bed where he could sleep from the time the flood occurred until he was released from his cell in the morning.").

As to the "subjective" prong of deliberate indifference, defendants argue that they "did what they were supposed to do" by giving Willis cleaning supplies and notifying maintenance of the leak in the cell. (ECF No. 27 at 8.) They note that Willis cannot demand that Jones and Bennett do someone else's job. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Willis *suspects* that no one notified maintenance of the leak in his cell (ECF No. 8 at 3), but the "Unit Log Book" indicates otherwise (ECF No. 29-1 at 2).

Willis argues that the defendants did not do "all what they could have possibly done" to ensure his safety. ECF No. 35 at 1. He states, "they did not protect Willis to

6

their best ability." *Id*. at 2. He notes that they "could have let [him] sit in the day room area until his cell was safe or the defendants could have moved him to another cell." *Id*.

"[N]ot every deviation from ideally safe conditions constitutes a violation of the constitution." *French v. Owens,* 777 F.2d 1250, 1257 (7th Cir. 1985) (quotation marks and citations omitted). Given that Willis only had puddles in his cell when he talked to Jones, Jones's decision to give Willis cleaning supplies and to contact maintenance to resolve the problem does not amount to deliberate indifference. *See Boyd v. Lane*, No. 3:13 CV 814, 2014 WL 554590, at *3 (N.D. Ind. Feb. 12, 2014) (concluding that plaintiff failed to state a claim when he alleged that prison officials instructed him to use cleaning supplies to resolve a "standing water" problem rather than choosing "other solutions" to resolve the problem); *see also Bonds v. Mollenhauer*, No. 2:11-CV-154 PS, 2011 WL 2326968, at *1 (N.D. Ind. June 6, 2011) (concluding that plaintiff failed to state a claim when he alleged that he told a prison official about "standing water" but the prison official "did nothing to have it cleaned up.")

Accordingly, the court will grant the defendants' motion for summary judgment and dismiss this case.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (ECF No. 26) is **GRANTED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this

court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 20th day of March, 2020.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge